UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CURTIS HARRIS #218238,

    Plaintiff,

v.

                                          Case No. 2:08-cv-105
                                          HON. ROBERT HOLMES BELL

PATRICIA L. CARUSO, et al.,

    Defendants.
_____/

OPINION

        Plaintiff Curtis Harris #218238, an inmate currently confined at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Patricia Caruso, Regional Prison Administrator James MacMeekin, Deputy Warden Lloyd Rapelje, Assistant Deputy Warden David Bergh, Assistant Deputy Warden Lyle Rutter, Resident Unit Manager Daniel Lesatz, Resident Unit Manager Denver McBurney, Resident Unit Manager Peggy Ann Carberry, Corrections Officer Hart and Corrections Officer Clapp. Plaintiff's motion to dismiss Defendants Hart and Clapp from this action was granted on June 12, 2008 (docket #5).

        Plaintiff's complaint alleges that in 2002, when he was being housed at the Ryan Road Correctional Facility (RRF), he committed a serious assault on a prison staff member. Plaintiff states that at the time he filed his complaint, he had been in administrative segregation for five years, nine months and three days. In addition, at the time of his complaint being filed, Plaintiff had been misconduct free for twelve months and sixteen days. Plaintiff states that he is considered to be on "indefinite" administrative segregation status.

Plaintiff alleges that his health has deteriorated and that he has been diagnosed with a brain aneurysm, which ruptured and was repaired on June 2, 2004. In addition, Plaintiff has hypertension and thyrotoxicosis, is hypoglycemic and has lumps in his throat, has pain throughout his body, swelling on the left side of his neck, lower chest and upper stomach, discoloration and occasional swelling in his left hand, sharp pulsing pain in his chest, and excessive acid reflux. Plaintiff claims that Defendants' actions violated his due process and equal protection rights, as well as his right to be free from cruel and unusual punishment. Plaintiff seeks an order releasing him from administrative segregation back into the general population.

Presently before the Court is Defendant MacMeekin's Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) (docket #48), and Motion for Summary Judgment filed by Defendants Rutter, Bergh, McBurney, Caruso, Lesatz, Rapelje, and Carberry pursuant to Fed. R. Civ. P. 56 (docket #36). In addition, Plaintiff has filed a Motion for Summary Judgment (docket #56), which responds to Defendants' motions, and Defendants have filed a response to Plaintiff's motion. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed

in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants assert that they are entitled to summary judgment on Plaintiff's due process claims because he does not have a liberty interest in residing in the general population. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Plaintiff contends that he has been placed in administrative segregation for more than five years. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding).

In *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005), the Supreme Court applied the rule of *Sandin* to conclude that Ohio's "Supermax" prison facilities imposed a sufficiently atypical and significant hardship to created a liberty interest implicating due process. In determining what process was due to an inmate faced with placement in the facility, the Court applied the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), requiring consideration of three distinct factors: (1) private interest that will be affected by official action; (2) risk of erroneous deprivation of such interest through procedures used, and probable value, if any, of additional or substitute procedural safeguards; and (3) government's interest, including function involved and fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Wilkinson*,

545 U.S. at 224-25. The Court concluded that the procedural protections introduced by the state of Ohio since inception of the lawsuit were adequate to satisfy the requirements of due process. *Id.* at 229-230.

Defendants state that the assault committed by Plaintiff in 2002 resulted in a staff member being hospitalized. Defendants assert that since that time, Plaintiff has continued to receive major misconduct tickets and that prior to his arrival at LMF, Plaintiff received fifty-six major misconduct tickets for assault resulting in a serious physical injury on staff and assault and battery on staff. Defendants also state that since arriving at LMF on October 10, 2006, Plaintiff has received additional major misconduct tickets, including misconducts for threatening behavior, disobeying a direct order, destruction of property, and assault and battery on staff. In support of this assertion, Defendants attach to their brief copies of several major misconducts received by Plaintiff while at LMF to their brief. These misconducts include charges of assault and battery, threatening behavior, disobeying a direct order, and destruction and misuse of property which occurred between November 10, 2006, and May 1, 2008. (Defendants' Exhibit A.) The court notes that the May 1, 2008, misconduct was for assault and battery on staff, and that Plaintiff also received a major misconduct for threatening behavior on April 21, 2008, seven days before he filed the instant complaint. (Defendants' Exhibit A, pp. 1-3.) Defendants also offer copies of Plaintiff's monthly segregation reviews from October 16, 2006, until July 10, 2008, showing that Plaintiff received such reviews each month. These reviews were signed by various Defendants including Rutter, McBurney, Carberry, Lesatz, Rapelje, Bergh, and MacMeekin. (Defendants' Exhibit B.)

In his motion, Plaintiff asserts that the segregation reviews were fabricated to the extent that they claim that he either participated in or refused to participate in the monthly review. However, Plaintiff fails to offer any evidence in support of these assertions. Moreover, as noted

above, Defendants offer copies of numerous misconduct convictions received by Plaintiff since his incarceration at LMF.

The court notes that given the length of Plaintiff's confinement in administrative segregation and the conditions associated with this confinement, it appears that such confinement may constitute an atypical and significant hardship. However, even if Plaintiff's incarceration in segregation is deemed to be atypical and significant, the consequence would merely be to entitle him to a periodic due process review of his segregation status. Applying *Hewitt v. Helms*, 459 U.S. 460 (1983), the court finds that Plaintiff's original placement and continuation in segregation was well-supported and, therefore, met due process standards. Plaintiff does not dispute that he was placed in administrative segregation because of a serious assault on staff, which resulted in the hospitalization of a staff member. Nor does Plaintiff dispute that following his classification to administrative segregation, he incurred several major misconducts, including assault on staff and possession of dangerous contraband. Given Plaintiff's record, he presented an obvious threat to prison staff. Moreover, it is clear that Plaintiff has received monthly reviews by the security classification committee (SCC), which were approved by Defendants MacMeekin and Bergh. The fact that Plaintiff disagrees with the reasoning and recommendations of the SCC does not render the periodic reviews constitutionally deficient. Accordingly, the court concludes that Plaintiff has received more than adequate procedural due process.

Plaintiff appears to be claiming that his confinement in administrative segregation violates his Eighth Amendment rights because he is suffering from numerous health problems. The Eighth Amendment prohibits any punishment which violates the civilized standards of humanity and decency, or involves the unnecessary and wanton infliction of pain. *See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To prove an Eighth Amendment violation, an inmate must show that he has been

deprived of the minimum civilized measures of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Defendants claim that they are entitled to summary judgment on his Eighth Amendment claims because none of them are health care employees, who would be aware of Plaintiff's health concerns or have access to his medical file. Moreover, the court notes that Plaintiff fails to show that his medical issues are the result of his confinement in administrative segregation. Therefore, the court will grant summary judgment to Defendants with regard to Plaintiff's Eighth Amendment claims.

With regard to Plaintiff's First Amendment and equal protection claims, Defendants correctly note that these claims are entirely conclusory. As noted by Defendants, Plaintiff merely states that his confinement in administrative segregation violates his equal protection and First Amendment rights, without asserting any specific factual allegations in support of these claims. In order to survive Defendants' motion, the complaint must afford the Defendants "fair notice of what Plaintiff's claim is and the grounds upon which it rests." *Brooks v. American Broadcasting Companies, Inc.*, 932 F.2d 495 (6th Cir. 1991). More than bare assertions of legal conclusions are ordinarily required to satisfy federal notice pleading requirements. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-437 (6th Cir. 1988); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984). Vague and conclusory allegations which are not supported by specific facts cannot sustain a civil rights claim. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982) (bare allegations of malice are insufficient to state a claim); *Brooks*, 932 F.2d at 498-499; *Scheid*, 859 F.2d at 436-437. *See also Branham v. Spurgis*, 720 F. Supp. 605, 607, n. 3 (W.D. Mich. 1989). Therefore, the court will grant Defendants summary judgment on Plaintiff's equal protection and First Amendment claims.

Defendants contend that they are entitled to summary judgment because they were not personally involved in the alleged misconduct. Defendants Caruos, MacMeekin, Bergh, Rapelje, Rutter, Lesatz, McBurney, and Carberry state that they are supervisory officials who were not directly involved in the underlying decision to keep Plaintiff in administrative segregation. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, Plaintiff must

show that Defendants had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendant Caruso was personally involved in the activity which forms the basis of his claim. Defendant Caruso's only role in this action involves the denial of administrative grievances or the failure to act. Defendant Caruso cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the court will grant summary judgment to Defendant Caruso for lack of personal involvement. However, as noted above, the remaining Defendants were all involved in the monthly segregation reviews and recommendations and signed the pertinent forms. (Defendants' Exhibit B.) Therefore, they are not entitled to summary judgment for lack of personal involvement.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir.

1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

As noted by Defendants, Plaintiff's motion for summary judgment merely responds to their motions and reasserts the allegations set forth in his complaint. Therefore, because Plaintiff has failed to show that he is entitled to summary judgment, his motion (docket #56) will be denied.

In summary, the court concludes that Plaintiff has failed to sustain his burden of proof in response to Defendants' motions for summary judgment. Accordingly, the court will grant Defendants' Motions for Dismissal and/or Summary Judgment (docket #36 and #48) and dismiss this case in its entirety. In addition, Plaintiff's motion for appointment of counsel (docket #52) will be denied as moot.

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997). For the same reasons that the court is granting Defendants' motions for summary judgment, the court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.


Dated: August 31, 2009 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE